IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN DAVIS, | ) |
| Plaintiff, | ) ) ) |
| | ) 1:17-cv-00273 |
| v. | ) ) |
| CODIE WEBSTER, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff Karen Davis brings this lawsuit alleging that Defendant Officer Codie Webster of the Emlenton Borough (PA) Police Department violated her right to be free from unlawful seizure under the Fourth Amendment to the United States Constitution by subjecting her to a blood draw without a warrant and without valid consent. According to the Complaint, Officer Webster initiated a traffic stop of Davis's vehicle on October 10, 2015. (Compl., ECF No. 1, ¶¶ 7–8.) Davis was then taken into custody and transported to UMPC Northwest Hospital, where Officer Webster presented her with a Pennsylvania DL-26 consent form for a blood draw to test her blood alcohol content (BAC). (*Id.* ¶ 13.) This form included a warning that if Davis did not consent, she would face enhanced criminal and civil penalties stemming from her refusal. (*Id.*) Based on this warning, Davis consented, and hospital staff performed the blood draw. (*Id.* ¶¶ 13–15.) Davis argues that her consent was neither willing nor voluntary (because it was given under the threat of prosecution), and therefore the warrantless blood draw done at Officer Webster's direction violated her constitutional rights. Davis further brings a common law claim for assault and battery against Officer Webster.

1

Officer Webster moves to dismiss Davis's Complaint with prejudice, asserting that he is shielded by qualified immunity. (Def.'s Mot. to Dismiss, ECF No. 7.) According to Officer Webster, although the warning on the DL-26 form regarding increased criminal and civil penalties has subsequently been deemed improper based on recent decisions from the Supreme Court of the United States and the Superior Court of Pennsylvania, on the date of Davis's blood draw, it was not unreasonable for a police officer to obtain consent by relying on the DL-26 form. (Def.'s Br. in Supp. of Mot. to Dismiss, ECF No. 8, at 3–4.)

For the reasons that follow, Defendant's Motion to Dismiss is granted as to both counts. Count I is dismissed with prejudice on the basis of qualified immunity. Because Count II is a state common law claim, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, Count II is dismissed without prejudice to its refiling in state court.

## I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept as true any unsupported conclusions, unsupported inferences, and "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. Analysis

To state a plausible claim under 42 U.S.C. § 1983, Davis must plead a deprivation of a constitutional right caused by a person acting under color of state law. *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). In her Complaint, Davis alleges that Officer Webster, using his authority as an Emlenton Borough Police Officer, violated Davis's Fourth Amendment right to be free from unlawful seizure by effecting the forcible taking of Davis's blood from her body against her will, specifically without voluntary consent. (Compl., ECF No. 1.)

In response, Officer Webster has asserted the defense of qualified immunity. The doctrine of qualified immunity shields government officials "from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). It "protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). To determine whether a government official is entitled to qualified immunity, courts ask two main questions: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts have discretion to address either question first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the "clearly established" prong is dispositive of the case, the court need not reach the first prong. *Id.* Because the central issue in this case is whether Davis's constitutional right was clearly established at the time of the violation, the Court believes it is appropriate to first and principally address the latter prong.

As this Court has recently observed, the standard for a plaintiff's claim to survive a defendant's defense of qualified immunity "is surgically exacting when it comes to the 'clearly established' prong." *Kane v. Barger*, No. 15-cv-846, 2017 WL 3535010, at *8 (W.D. Pa. Aug. 17,

3

2017). This Court must apply qualified immunity and enter judgment for Officer Webster unless it concludes that "federal law was so clearly established that *every reasonable officer* in [Webster's] position would have known *at the time* that [*Webster's*] *particular conduct* deprived [Davis] of such right, defined by the Court *with specificity*, such that *existing precedent* drawn from the Supreme Court, the Third Circuit, or a robust consensus of the other Courts of Appeals, *places the question beyond debate* because such precedent, even if not directly on point, *squarely governs* the case at hand." *Id.* at *8 (italics in original) (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308–09 (2015); *Reichle*, 566 U.S. at 664).

Officer Webster asserts that on the date he presented Davis with the DL-26 form—October 10, 2015—it was not clearly established law that using that form (which included a warning that refusing could result in increased penalties) to obtain consent to perform a blood draw would deprive Davis of her Fourth Amendment rights. Davis counters that her right to be free from a warrantless blood draw in the absence of exigent circumstances was clearly established at the time of Officer Webster's actions, specifically by *McDonald v. United States*, 335 U.S. 451 (1948), and *Missouri v. McNeely*, 569 U.S. 141 (2013). (*See* Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 12, at 2–5.)

Davis defines her constitutional right at issue too broadly. The particular conduct before us involves Officer Webster's use of the DL-26 form, which included criminal penalties for refusing consent; neither *McDonald* nor *McNeely*, the cases on which Davis relies, squarely governs this issue.[1] The Supreme Court has repeatedly directed that courts should "not . . . define clearly

---

[1] *McDonald*, which involved the warrantless search of a rooming house for gambling activities, held that when officers are not responding to an emergency, there must be compelling reasons to justify the absence of a search warrant. 335 U.S. at 454–55. That case did not involve a blood draw at all, nor allegedly faulty consent. *McNeely*, which involved the warrantless taking of a blood sample over an individual's refusal, held that the natural metabolization of alcohol in the bloodstream does not present a per se exigency that justifies a warrantless search. 569 U.S. at 152–53. Because neither case involved the validity of consent for a blood test given under threat of

4

established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 742). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

Accordingly, interpreting the "clearly established" prong as stringently as the law requires, the Court must determine whether, on October 10, 2015, federal law clearly established that Officer Webster's use of the DL-26 form with criminal penalties for refusing consent violated Davis's Fourth Amendment rights. On June 23, 2016, the Supreme Court decided *Birchfield v. North Dakota*, which held for the first time that motorists suspected of driving under the influence cannot be deemed to have validly consented to submit to a blood test when the consent is provided on pain of prosecution for a criminal offense. 136 S. Ct. 2160, 2186 (2016). Thus, on the date Davis's blood was drawn (more than eight months before *Birchfield* was decided), the Supreme Court had not squarely addressed the constitutionality of Officer Webster's particular conduct—that is, obtaining consent for a blood draw by subjecting motorists to criminal penalties if they refuse.

The same is true under Pennsylvania law. *Commonwealth v. Updike*, decided in the wake of *Birchfield* on October 13, 2017 (two years after Davis's blood draw), was the first appellate case in Pennsylvania that invalidated the criminal prosecution provision of the DL-26 form. 172 A.3d 621 (Pa. Superior Ct. 2017). In *Updike*, a motorist suspected of driving under the influence was presented with the DL-26 form, and the motorist consented to a blood draw based on the threat of criminal penalties. *Id.* at 623. The motorist was charged with driving under the influence. *Id.*

---

criminal penalties, the Court cannot fairly say that this precedent "placed the statutory or constitutional question beyond debate." *Reichle*, 566 U.S. at 664.

5

While the motorist's case was pending, the Supreme Court decided *Birchfield. Id.* at 624. The motorist moved to suppress the blood draw evidence, arguing that it was collected in violation of the Fourth Amendment. *Id.* The Pennsylvania Superior Court concluded that the criminal prosecution provision of the DL-26 form was invalid in light of *Birchfield*; however, the blood draw evidence in this motorist's case fit within the good-faith exception to the exclusionary rule because it occurred before *Birchfield* was decided. *Id.* at 624. The Superior Court stated, "When [the motorist] was arrested and gave consent to the blood draw, the warnings regarding increased criminal penalties for refusing a blood draw (included in form DL-26) were legally correct." *Id.*

Although *Updike* concerned a motion to suppress rather than a qualified immunity defense, its ultimate conclusion—that the blood draw evidence should not be suppressed because *the officer acted reasonably in relying on the DL-26 form*—is highly relevant to this Court's conclusion that at the time of Davis's blood draw, federal law was not so clearly established that *every reasonable officer* in Webster's position would have known *at the time* that relying on the DL-26 form to obtain consent deprived Davis of her constitutional rights. As the *Updike* court held:

> At the time of [the motorist's] arrest, police were required to read [the motorist] the warnings contained in the DL-26 form which this Court and our Supreme Court had consistently upheld as constitutional. Police officers in Pennsylvania had no reason to believe that the Supreme Court of the United States would render the statute at issue unconstitutional in *Birchfield*.

*Id.* at 627 (internal citations omitted).

This same situation is present in Davis's case. Davis has not directed the Court to any precedent from any court (the Supreme Court, the Third Circuit, or anywhere else) prior to October 10, 2015, stating that using the DL-26 form, or otherwise obtaining consent for a blood draw on pain of additional criminal charges, violates the Fourth Amendment. Without such precedent, the Court cannot conclude that federal law was so clearly established that *every* reasonable officer in

6

Webster's position would have known that this conduct deprived Davis of her Fourth Amendment rights. *See Reichle*, 566 U.S. at 664; *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 248 (3d Cir. 2016). Accordingly, Davis's claim cannot survive the clearly established prong of the qualified immunity analysis, and the Court must grant Officer Webster qualified immunity. For this reason, Count I must be dismissed with prejudice.

Count II is a common law claim against Officer Webster for assault and battery. Because the Court has dismissed Count I, the only claim over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over Count II. 28 U.S.C. § 1367 (c)(3). Accordingly, Count II is dismissed without prejudice.

### III. Conclusion

For the reasons stated in this Memorandum Opinion, Defendant's Motion to Dismiss, ECF No. 7, is GRANTED. Count I of Plaintiffs' Complaint is dismissed with prejudice on the basis of qualified immunity. Count II is dismissed under 28 U.S.C. § 1367(c)(3) without prejudice to its refiling in state court.

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: March 2, 2018

cc: All counsel of record